IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS EASTERN
DIVISION

| | |
|---|---|
| OPENLANDS, MIDEWIN HERITAGE ASSOCIATION, and SIERRA CLUB,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF TRANSPORTATION, ANTHONY FOX, Secretary, United States Department of Transportation, FEDERAL HIGHWAY ADMINISTRATION, VICTOR M. MENDEZ, Administrator, Federal Highway Administration, and CATHERINE BATEY, Division Administrator, Illinois Division, Federal Highway Administration,<br><br>Defendants.<br><br>ILLINOIS DEPARTMENT OF TRANSPORTATION,<br><br>Proposed Defendant-Intervenor | No. 13-CV-04950<br><br>Hon. Ronald A. Guzman |

**MEMORANDUM OF LAW IN SUPPORT OF ILLINOIS DEPARTMENT OF TRANSPORTATION'S MOTION TO INTERVENE UNDER FEDERAL RULE OF CIVIL PROCEDURE 24(a) OR 24(b)**

The Illinois Department of Transportation ("IDOT") files this memorandum of law in support of its motion to intervene as a defendant in the lawsuit brought by Openlands, Midewin Heritage Association, and Sierra Club (collectively "Plaintiffs") challenging the January 17, 2013, Tier 1 Record of Decision ("Tier 1 ROD") issued by the Federal Highway Administration ("FHWA") for the Illiana Expressway Project ("Project"). As discussed below, IDOT believes that it is entitled to intervene as a defendant in this case

either as of right under Rule 24(a) or by permission under Rule 24(b) of the Federal Rules of Civil Procedure.

## I. STATEMENT OF FACTS

IDOT, together with the Indiana Department of Transportation ("INDOT") has been studying possible highway corridors linking Illinois and Indiana south of Interstate-80 for many years. In 2009 Indiana completed a feasibility study for a potential Illiana expressway, and, in 2010, IDOT completed a supplemental study for the possible expressway. The two states developed a Memorandum of Agreement which outlines a mutual commitment by both states to pursue further development of the Project.

IDOT has been deeply involved in the environmental studies for the Project. In June, 2011, the FHWA published a Notice of Intent ("NOI") to prepare an environmental impact statement for the Project. 76 Fed. Reg. 33401 (June 8, 2011). The NOI states that FHWA "in cooperation with the Illinois Department of Transportation and the Indiana Department of Transportation, will prepare a Tier One Environmental Impact Statement ("EIS") for the Illiana Corridor Project." 76 Fed. Reg. 33402. The EIS would analyze potential corridors and impacts of those corridors in a study area covering "approximately 950 square miles in portions of Will and Kankakee counties in Illinois and Lake County in Indiana." *Id.* The NOI also states that the EIS would be based on "input from Resource Agencies in both Illinois and Indiana on the level of detail and methodologies to be used in the EIS," and that a "bi-state agency coordination process…" would be developed. *Id.*

Since that announcement, IDOT, INDOT, and FHWA have shared responsibilities in the oversight, coordination, and preparation of the Tier 1 EIS that is

the subject of this lawsuit. As co-leader of the Project, IDOT committed approximately $11.75 million and thousands of hours of staff time in the development of the Tier 1 Final EIS ("FEIS"). Throughout the Project, IDOT engaged in a robust public involvement effort based on their goal of developing Context Sensitive Solutions ("CSS") for the Project. The inclusion of CSS in the Project promoted a collaborate approach that involved all stakeholders and seeks to develop, build and maintain multimodal transportation solutions that are cost-effective and fit into and reflect that Project's surroundings – its "context."

A stakeholder is anyone who could be affected by the Project and has a stake in its outcome. Throughout the development of the Tier 1 FEIS, IDOT held 6 public meetings, 2 public hearings, 10 Corridor Planning Group meetings, and over 130 small group meetings with Project stakeholders to receive input on the Project. In addition, IDOT distributed over 9,000 newsletters containing information about the Project and maintained a Project website (www.IllianaCorridor.org). Schilke Decl., ¶ 5. Finally, IDOT is also co-leader of the Tier 2 NEPA study that is currently underway and IDOT, INDOT, and FHWA continue to share responsibilities in the oversight, coordination, and preparation of the Tier 2 EIS. Schilke Decl., ¶ 6, 7. Were the Court to issue an adverse decision reversing FHWA's approval of the Tier 1 ROD, IDOT's investment in time and money in the Project and in the ongoing Tier 2 NEPA study will be in jeopardy, and IDOT's ability to successfully plan other transportation facilities in Illinois will be hampered. Schilke Decl., ¶ 8.

## II. ARGUMENT

### Introduction

IDOT is entitled to intervene as a matter of right in this litigation under Rule 24(a)(2). Simply put, it is IDOT's ability to proceed with the further development of the Project that is at issue in this litigation. The outcome of this litigation will impact IDOT's ability to proceed with the Tier 2 phase of the Project, and, assuming approval, implementation of that project within the State of Illinois. Also, IDOT, as the Illinois state transportation agency, is legally mandated under Illinois law to oversee implementation of this Project within the State. In the alternative, the Court should grant Illinois permissive intervention under Rule 24(b). Other courts have previously allowed various state transportation agencies, as well as IDOT, to intervene as a defendant in similar litigation.

### A. IDOT's Interests in the Illiana Project may be substantially impaired if it does not intervene in this litigation.

Rule 24(a) of the Federal Rules of Civil Procedure ("FRCP") gives a party the right to intervene in an action if that party claims that "a substantial interest of his is likely to be impaired if he is not permitted to intervene." *City of Chicago v. Fed. Emergency Mgmt. Agency,* 660 F.3d 980, 987 (7th Cir. 2011). The Court of Appeals for the Seventh Circuit has established a four-factor test for intervention of right: "[I]ntervention of right is required only where parties 'establish that (1) their motions to intervene were timely[1]; (2) they possess an interest related to the subject matter of the . . . action; (3)

---

[1] Plaintiffs filed their Complaint on July 10, 2013 (ECF No. 1), and the Federal Defendants have not yet filed an Answer. Further, the Court entered an Order allowing IDOT to file its Motion to Intervene by October 4, 2013. As such, it is clear that permitting intervention at this time would not disrupt the orderly and timely determination of the issues in this case, and that

4

disposition of the action threatens to impair that interest; and (4) the [parties to the action] fail to represent adequately their interest." *Ligas v. Maram,* 478 F.3d 771, 773 (7th Cir. 2007) (internal quotations omitted). Courts are to construe Rule 24(a)(2) liberally and should resolve doubts in favor of allowing intervention. *Miami Tribe of Oklahoma v. Walden,* 206 F.R.D. 238, 241 (S.D. Ill. 2001). As set forth below, IDOT has a substantial interest in the Project that is likely to be impaired if it is not permitted to intervene.

**1. IDOT has a substantial interest in the Illiana Project and the Court's disposition of the case would significantly impact IDOT.**

Federal Rule of Civil Procedure 24(a)(2) provides that "the Court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that the disposition of the action may as a practical matter impair or impede the movant's ability to protect its interest." In the Seventh Circuit a potential intervenor must show that its interest is a "direct, significant legally protectable" one. *Reich*, 64 F.3d at 322 (employees had a significant, protectable interest in outcome of labor dispute between Department of Labor and establishment) (quoting *Am. Nat. Bank & Trust Co. of Chicago v. City of Chicago*, 865 F.2d 144, 146 (7th Cir. 1989)). Further, "[i]n ascertaining a potential intervenor's interest in a case, [Seventh Circuit case law] focus[es] on the issues to be resolved by the litigation and whether the potential intervenor has an interest in those issues." *Id.*

IDOT's interest in this project is substantial: it has expended approximately $11.75 million and dedicated thousands of hours of staff time in the planning process thus far. Further, IDOT, in conjunction with INDOT, was responsible for preparing a Draft

---

IDOT has assuredly met the "reasonably timely" standard set by the 7th Circuit. *Reich v. ABC/York-Estes Corp.*, 64 F.3d 316, 321 (7th Cir. 1995).

5

Transportation System Performance Report, Draft Purpose and Need Statement, and the Tier 1 EIS for the Illiana project. *See* Complaint, ¶ 41-46, 69. Notably, these project documents rely upon regional population forecasts produced by a consultant retained by IDOT – forecasts that the Plaintiffs now claim are inaccurate. *Id.* The Plaintiffs also claim that the Tier I FEIS – which was prepared in part by IDOT – does not adequately address certain impacts to the Midewin National Tallgrass Prairie and other natural resources.

If the Project is substantially delayed by this litigation, IDOT would likely incur additional development costs, resulting in additional burdens to Illinois taxpayers. These additional burdens would be significantly detrimental because the Project will be an important link in the Illinois State transportation system, and it is necessary for continued economic growth within the State. As one of the project's co-sponsors, IDOT's interests are directly affected by this litigation, and those interests are significant and legally protectable.

Second, IDOT's interest as the state agency responsible for highway construction in Illinois also constitutes a direct and significant interest in this litigation. IDOT is mandated by law to develop and implement state and regional transportation solutions for Illinois residents. *See, e.g.,* 605 ILCS 5/4-101.5 (requiring IDOT to "investigate and determine the various methods of highway construction adapted to different sections of the state"). Further, IDOT has a specific duty under the Public Private Agreements for the Illiana Expressway Act to collaboratively plan and implement the Illiana corridor project. 605 ILCS 130/1 *et seq*. Consequently, IDOT is legally responsible under Illinois law for the implementation of the Project at issue in this litigation. If the Court were to

issue an adverse decision reversing FHWA's issuance of the ROD, IDOT would likely need to expend additional time and money studying an alternative solution to accomplish its statutory mandate (that is, addressing the transportation needs of Illinois residents). *See,* 605 ILCS 5/4-101 *et seq*. Accordingly, it has a "direct, significant legally protectable" interest in the outcome of this litigation.

> **2. The Federal Highway Administration cannot adequately represent IDOT's interests in this suit.**

In the Seventh Circuit, "[a] party seeking intervention as of right must only make a showing that the representation 'may be' inadequate and 'the burden of making that showing should be treated as minimal.'" *Ligas v. Maram,* 478 F.3d 771, 774 (7th Cir. 2007) (*quoting Trbovich v. United Mine Workers of Am.,* 404 U.S. 528, 538 n. 10 (1972)). However, "when the prospective intervenor and the named party have the same goal, a 'presumption arises that representation in the suit is adequate.'" *Wisconsin Educ. Ass'n Council v. Walker,* 605 F.3d 640, 659 (7th Cir. 2013) (quoting *Shea v. Angulo,* 19 F.3d 343, 347 (7th Cir. 1994)). Once that presumption arises, the burden falls upon the prospective intervenor to show that "some conflict" between the intervenor and the named party exists. *Walker,* 605 F.3d at 659.

FHWA's interest in the Illiana project is attenuated: FHWA primarily serves as a funding conduit for highway projects and ensures that states follow federal guidelines for the expenditure of federal dollars on state-sponsored projects. FHWA is responsible for overseeing a nationwide system of highways, and thus may view the Illiana corridor from a far-sighted perspective. By contrast, IDOT's interest is much more narrowly focused. The Tier I FEIS itself lists the asserted needs for the proposed expressway as (1) improving *regional* mobility; (2) alleviating *local* system congestion and improving

7

*local* system mobility, and (3) providing for the efficient movement of freight (emphasis added). 78 Fed. Reg. 9771 (Feb. 11, 2013). From a standpoint of national priorities, FHWA may not view these local and regional concerns with the same urgency or importance as IDOT. Furthermore, the FHWA does not have the same vested interest in the successful and expedient delivery of the public-private partnership procurement as IDOT.

The attenuated nature of FHWA's interest in the Project is underscored by the limited scope of the Court's review in this action, further emphasizing the need for IDOT intervention. A review of agency decisions under NEPA and Section 4(f) is governed in both cases by the "arbitrary and capricious" standard of the APA. *Wade v. Lewis,* 561 F. Supp. 913, 950 (N.D. Ill. 1983). Although the court's review is to be "searching and careful," it may not substitute its judgment for that of the agency's. *Marsh v. Oregon Natural Resources Council,* 490 U.S. 360, 377 (1989).

The goal is to ensure that the agency took a "hard look" at the environmental factors implicated and based its decision on a rational consideration of relevant factors. *The Eagle Found., Inc. v. Dole,* 813 F.2d 798, 803 (7th Cir. 1987); *see also Habitat Educ. Center v. U.S. Forest Service,* 673 F.3d 518, 527 (7th Cir. 2012) (noting that one of NEPA's goals is to ensure that "the agency . . . will have available, and will carefully consider, detailed information concerning significant environmental impacts"). The U.S. Supreme Court has noted that "[w]hen specialists express conflicting views, an agency must have discretion to rely on the reasonable opinions of its own qualified experts even if, as an original matter, a court might find contrary views more persuasive." *Marsh,* 490 U.S. at 378.

The Plaintiffs claim that FHWA violated NEPA and Section 4(f) by relying upon inflated population, traffic, and employment forecasts for the Illiana expressway study area, and also by failing to adequately analyze Alternative B3's environmental impacts (particularly upon the Midewin National Tallgrass Prairie). To prevail, FHWA will need to demonstrate to the Court that that the Tier 1 EIS that was ultimately approved took a "hard look" at these issues and made a rational decision based on all information available to FHWA. Yet as noted above, FHWA's role in the EIS process is limited; typically, FHWA delegates the heavy lifting to the state project sponsors – here, IDOT and INDOT. *See Wade v. Dole,* 631 F. Supp. 1100, 1107 (N.D. Ill. 1986) ("In reviewing the Secretary's decision, we consider the full administrative record that was before the Secretary at the time he made his decision . . . . Of course, in reaching the decision the Secretary herself may have had little or nothing more than the recommendation of a subordinate. But the term "Secretary" in this context refers not merely to an individual but to an entire process of bureaucratic decision making").

As an intervening party, IDOT – through briefs, motions, and other papers filed before the court – would be in a much stronger position than FHWA to defend the conclusions of the Tier 1 FEIS, including its reasonable reliance upon the findings of its consultant's population forecasts and its consideration of the project's potential environmental impacts. Accordingly, IDOT respectfully requests that the Court allow IDOT to intervene to assure adequate representation of its interests.

**B. Federal district courts have routinely permitted Departments of Transportation and other project co-sponsors to intervene in NEPA challenges**

In NEPA cases, sponsors of federal projects – including state transportation agencies – are routinely permitted to intervene as defendants in NEPA actions to protect their interests. For example, in *Nat'l Trust for Historic Preservation in the United States v. River Fields, Inc.,* Case No. 3:10-CV-00007-JGH-DW (W.D. Ky. July 12, 2011) (the "East End litigation"), both INDOT and the Kentucky Transportation Cabinet ("KYTC") were permitted to intervene as defendants. The plaintiffs' allegations in the East End litigation were essentially identical to those of the Plaintiffs in this litigation – namely, that FHWA failed to comply with NEPA and Section 4(f) of the Department of Transportation Act in approving an ROD for a bridge crossing project. Notably, both INDOT and KYTC made similar arguments for intervention as those outlined in this memorandum of law.

Similarly, the Commonwealth of Virginia and the Virginia Department of Transportation ("VDOT") intervened in a lawsuit challenging FHWA's approval of a Tier 1 FEIS for improvements to the Highway I-81 Corridor. *See Shenandoah Valley Network v. Capka,* 2009 WL 2905564 (W.D. Va. Sept. 3, 2009). In that case, VDOT had spent more than a decade planning and studying ways to improve I-81 in order to account for rapidly increasing traffic volumes.[2] *Id.* at *1-*3. The litigation was dismissed at the district court level and affirmed on appeal. *Shenandoah Valley Network v. Capka,*

---

[2] Interestingly, the potential for PPP agreements appears to have played a role in VDOT's study and planning efforts. See, *Shenandoah Valley Network,* 2009 WL 2905564 at *3 ("With [earlier studies] as background, interest from private sector firms regarding possible partnership with VDOT under Virginia's Public-Private Transportation Act compelled VDOT to consider more ways to address existing and future needs in the I-81 corridor"). Similarly, the Illiana Project envisions public-private partnership cooperation.

669 F.3d 194 (4th Cir. 2012). *See also, e.g., Utahans for Better Transp. v. United States Dep't of Transp.,* 305 F.3d 1152, 1161 (10th Cir. 2002) (Utah Department of Transportation intervened in challenge to the adequacy of the FEIS that UDOT and its contractors prepared for a highway expansion project); *Coalition on Sensible Transp. v. Dole,* 826 F.2d 60, 62 (D.C. Cir. 1987) (Maryland State Highway Administration intervened in NEPA and Section 4(f) challenge to expansion of Interstate 270); *Sierra Club v. Sec'y of Transp.,* 776 F.2d 776, 777 (1st Cir. 1985) (Maine Department of Transportation intervened in challenge to bridge construction permit in case where MDOT, in conjunction with FHWA, had prepared environmental assessments); *Florida Wildlife Fed'n v. Goldschmidt,* 611 F.2d 547, 547-48 (5th Cir. 1980) (Florida Department of Transportation intervened in lawsuit alleging that U.S. DOT had failed to prepare an EIS for the remaining portion of a highway construction project); *Hoosier Envt'l Council v. U.S. Army Corps of Eng'rs*, No. 11-cv-1387 SEB- DML (S.D. IN), at ECF No. 28 (Feb. 15, 2012); *National Trust for Historic Preservation v Federal Hwy. Admin.,* No. 3:10-CV-7-H (W.D. Kty) at ECF No. 71 (Sept. 12, 2011); *Hoosier Envt'l Council v. U.S. Army Corps of Eng'rs*, No. 1:11-cv-0202-LJM-DML (S.D. Ind), at ECF No. 26 (May 27, 2011); *Sierra Club North Star Chapter v. LaHood,* 693 F.Supp.2d 958, 963-64 (D. Minn. 2010) (Wisconsin and Minnesota Departments of Transportation intervened in NEPA challenge to bridge crossing project).

Finally – and perhaps more to the point – IDOT itself has previously intervened as a party-defendant in actions challenging federal approval of an EIS for a highway project within the State of Illinois (the "Napoleon Hollow" project). *See Wade v. Lewis,* 561 F. Supp. 913, 919 n. 1 (N.D. Ill. 1983) (noting that the court had previously granted

a motion by IDOT and its Secretary to intervene as defendants). The procedural posture of that case suggests that IDOT's involvement helped push the highway project forward: for example, after initially finding "substantial questions" as to the adequacy of the EIS, the court (by agreement of the parties) permitted the parties to supplement the administrative record rather than remanding the case to the U.S. Department of Transportation for further proceedings. Based on the supplemented record, the court upheld the adequacy of the EIS under NEPA. *Id.* at 938. Like other state transportation agencies in many different cases, IDOT should be permitted to intervene in the matter at hand.

**C. IDOT's intervention in this litigation may lead to an expedient resolution.**

To the extent that a resolution other than a Court judgment is possible, IDOT and INDOT can play a vital role in fashioning such a resolution. For example, the East End litigation and settlement (*Nat'l Trust for Historic Preservation in the United States v. River Fields, Inc.,* Case No. 3:10-CV-00007-JGH-DW (W.D. Ky. July 12, 2011)) underscores the importance of IDOT's intervention in this litigation. The initial NEPA/4(f) complaint in the East End litigation was filed in 2009. INDOT and KYTC intervened in 2011, and a settlement was reached in January 2013. Like the East End litigation, expedient resolution of this litigation would ostensibly help push the PPP aspect of the transaction forward. However, FHWA does not have an interest in the contemplated PPP transaction. Here in particular, IDOT's intervention may be critical.

The second point of the East End litigation to emphasize is the nature of its eventual resolution. In the settlement agreement, both INDOT and KYTC agreed to undertake specific obligations. In particular, the agencies agree to provide $1.7 million

in state funds (50% each) to a historic preservation and enhancement fund dedicated to acquiring, preserving, and maintaining some of the historic resources threatened by the bridge project. The settlement agreement shows evidence of practical compromise. For example, it permits five historic homes to be displaced by the bridge crossing project, but on the condition that the homes be relocated rather than demolished. The agreement specifically places the burden upon INDOT – both procedurally and financially – to complete these relocation efforts.

Similarly, in any potential resolution in this matter, the Plaintiffs will likely seek commitments from IDOT before they forever waive their claims. It would be very difficult for IDOT to make such a commitment in a manner that is satisfactory to the Plaintiffs without being a party to the litigation underlying any future resolution.

**D. In the Alternative, IDOT Requests that the Court Grant IDOT Permissive Intervention under Federal Rule of Civil Procedure 24(b).**

If this Court does not grant IDOT intervention as a matter of right under Rule 24(a), IDOT respectfully requests that the Court exercise its discretion to allow IDOT to intervene under Rule 24(b). Under Rule 24(b), this court has broad discretion to grant a timely motion for permissive intervention where the applicant's claim or defense, and the main action, have a question of law or fact in common. Fed. R. Civ. P. 24(b)(1). The Seventh Circuit has stated that "[t]wo requirements must be met before a court may exercise its discretionary power to grant intervention under 24(b)(2). The proposed intervenor must demonstrate that there is (1) a common question of law or fact, and (2) independent jurisdiction. Other than these two requirements . . . intervention under 24(b)(2) is entirely discretionary." *Security Ins. Co. of Hartford v. Schipporeit, Inc.*, 69 F.3d 1377, 1381 (7th Cir. 1995) (internal citations omitted) (recognizing that benefits of

having an underlying claimant in a coverage suit are "considerable," and that "the most obvious benefits of intervention . . . are the efficiency and consistency that result from resolving related issues in a single proceeding"). In exercising that discretion, "the court must give some weight to the impact of the intervention on the rights of the original parties," weighed against the benefit of the proposed intervenor. *Id.*

IDOT meets the minimal criteria for its timely motion for permissive intervention in the entirety of this proceeding. IDOT's interest in defending the FHWA's approval of the Tier 1 ROD, clearly shares common issues of law and fact with the main action because it is the project sponsored by IDOT that is at issue in this action. In addition, at this beginning stage of the litigation, neither Plaintiffs nor Federal Defendants can demonstrate that they would be prejudiced by IDOT's intervention. Such intervention will not only benefit IDOT, by allowing it to defend its interest in the Project that is at issue here, but will also benefit the Court by providing the unique perspective and information that only IDOT can provide.

### III. CONCLUSION

For the reasons stated above, IDOT respectfully requests that this Court grant IDOT's motion to intervene as a matter of right under Rule 24(a)(2) or, in the alternative, to intervene permissively under Rule 24(b).

Respectfully submitted,

ILLINOIS DEPARTMENT OF
TRANSPORTATION

By: s/ Lance T. Jones
One of Its Attorneys

LISA MADIGAN
Attorney General of Illinois
Michael A. Forti, Special Asst. Attorney General
100 W. Randolph, Suite 6-600
Chicago, Illinois 60601
Lance T. Jones, Special Asst. Attorney General
2300 S. Dirksen Parkway, Room 313
Springfield, Illinois 62764